[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTHER'S PETITION TO REVOKE AND DCF PETITIONTO EXTEND COMMITMENT
This contested revocation/extension of commitment concerns Michael R., born May 8, 1991, now 3 years 5 months old. Michael was first removed from his parents' care at 15 months of age by order of temporary custody issued August 11, 1992 based on parents' refusal to remove child from their high lead apartment after two hospitalizations for lead poisoning. At that time a petition had already been filed by the Department alleging the child was neglected, based on alleged "illicit sexual activities while child is present", father's physical discipline of child on two occasions, and mother's failure to protect the child despite "repeated efforts and support of service providers." The Department had been providing services to mother through a parent aide on an ongoing basis because mother's decision-making abilities are limited and two children had previously been removed from her care permanently. Father also has a prior history with the Department. He was convicted in 1983 of two counts of risk of injury to his two children and sentenced to 5 years suspended after two years concurrent, and then sentenced again on a violation of probation for failure to obtain therapy.
While the child was in foster care the first time, the father agreed to consent to terminate his parental rights. Thereafter, the mother pled no contest to the neglect petition, the child was adjudicated and, on December 2, 1992, was returned to mother's care under an order of protective supervision, with a condition of no contact between child and father. This agreement rendered the mother and child homeless, as they had always resided with father.
After an unsuccessful stay at a shelter, including several reports of mother's poor care of the child, mother and child CT Page 11017 returned to father's home and a second OTC was obtained January 8 and again, to correct a time defect, on January 19, 1993. At the OTC hearing on January 27, 1993, the Department's Motion to Reopen Disposition and Modify to Commitment was granted by agreement and the child was committed to July 27, 1994. No new expectations were established.
In the meantime, father revoked his consent to terminate his parental rights, and that petition was withdrawn.
On September 24, 1993, mother filed a petition to revoke said commitment, alleging that cause for commitment no longer exists and that she is now suitable and worthy of assuming guardianship. The Department objected, and while that petition was pending, filed its petition to extend said commitment, alleging concerns about both parents' ability to parent, as more fully set out in the Summary of Facts substantiating extension, as on file.
During the course of the hearings on said petitions, the commitment was extended without prejudice to preserve the status
After hearing and reviewing all the evidence and memoranda of law, the court finds that cause for commitment still exists and that continuing in out-of-home placement is in the child's best interests. In re Juvenile Appeal, 177 Conn. 648 (1979); Conn. Gen. Stat. Sec. 46b-129g.
The father remains an untreated pedophile, convicted of sexually abusing his two children repeatedly when they were very young. Without behavior modification therapy, he remains at high risk to offend again, according to the reports and testimony of both Dr. Anthony Campagna, a licensed clinical psychologist, and Peter Gandelman, a psychotherapist specializing in sex offender treatment. His presence in the home without making an effort to rehabilitate renders the home an unsafe environment. In re DavidD., 560 N.E.2d 966 (Ill. 1990); In re Harpman, 496 N.E.2d 1242 (Ill. 1986); In re Loliesha O; SCJM Hartford, 6-16-82.
Further, mother has been unable to demonstrate sufficient gains in parenting ability to satisfy the various counselors and service providers that she should have unsupervised visitation, let alone custody. The presence of father's teenage son Dwayne in the home, himself a victim of his father's sexual abuse, has not been shown to be a positive factor. And finally, although the parents have worked on correcting the serious lead paint problem, no CT Page 11018 reinspection results were introduced in evidence to show the condition has been fully remedied. The mother has clearly failed to meet her burden of proof that no cause for commitment exists. Conn. Practice Book § 1045.2(1).
On a positive note, when the parent-child evaluation was done over a year ago, both parents demonstrated a commitment to each other and to the child, and the child appeared comfortable with the parents. The underlying causes for commitment and requirements for reunification must be addressed immediately by all parties so that the child's permanent placement can be determined.
Accordingly, the petition to revoke is denied and the extension to January 27, 1996 is affirmed. Reasonable efforts to reunify were found previously. The following expectations are established by the court:
The father is expected to immediately engage in sex offender treatment. Failure to participate in such treatment until successfully discharged may be grounds for termination of his parental rights as evidence of failure to rehabilitate.
As an incentive to engage in treatment and work towards reunification, the prohibition on contact between the father and child is abolished. The father may participate in and is expected to participate in as much supervised visitation as his schedule and the child's schedule permit. Failure to participate in sex offender treatment shall not be a bar or prerequisite to supervised visitation, although treatment is an absolute requirement for unsupervised visitation, reunification or revocation. The father is further expected to be a positive force in the visitation and to refrain from any negative or derogatory behavior or comments.
The mother is expected to demonstrate her ability to care for the child and meet his needs for safety, nurturance and guidance. To enable her to meet this expectation, the Department is ordered to provide at least one weekly visitation in the parents' home with a parent aide or educator, in addition to the weekly excursion with the child. The site of the weekly excursions should be varied to familiarize mother with some of the age appropriate activities and community resources available and required to parent, such as bus rides to the park, story hour at the library, shopping, doctor's visits and day care or nursery school activities. The mother must demonstrate her ability to care for, supervise and engage the child with her in these activities. CT Page 11019
If father participates in treatment and visits appropriately, if mother can take over the task of being responsible for the child during visits, and if the child responds positively, then unsupervised visitation can begin with a goal of reunification. If not, the Department has made clear its intention to proceed with a petition to terminate parental rights. In either event, a petition to extend and/or terminate or a petition to revoke is due by October 27, 1995. Status reports should be filed with this court and distributed to counsel by February 27, 1995 and again by June 27, 1995 to monitor progress on the expectations. This Meriden case will remain in New Haven until September 1, 1995, at which time it shall be transferred to Middletown Juvenile Court. Any party can petition the court for an earlier transfer. Any appeal period shall commence on issuance of notice of this written decision, even though it was announced orally in court on the above date.
So ordered,
Karen Nash Sequino Superior Court Judge